Good afternoon, we're here to hear arguments, to debate arguments, C. B. v. City of Sonora. Councilor Levy? Good afternoon, your honor. My name is Stephanie Wu and I represent the defendants' appellants, the City of Sonora, Chief Mace McIntosh, and Officer Harold Croft. At this time, I would like to represent each of the four of us. Before I move forward, I'd like to inquire whether it would be important to have a preference as to what issues I address first. No? I'm sorry? A preference as to what issues I address first. You're the lawyer. Okay. You have an order dealing with one issue that we want to hear about, but the order is yours to decide. Okay, I can begin with that then. That's fine. So what's the standard of review? Let's get right to it. Okay. Would you mind moving the microphone a little closer, Andrea? Is that better? The court has asked us to examine and determine whether or not the amendment, the 2003 amendment to Rule 51, FRCP Rule 51, aggregates this circuit's prior precedent, barring any plain error review where the party fails to object in accordance with the rules of 51. Before I address that at this point, I am not prepared to concede that plain error review, if applicable, would apply in this case because we believe that we are in compliance with Rule 51 and that harmless abuse of discretion would apply. In other words, did you preserve your objection? Is that what you're telling us? Well, under the circumstances that were present at that time, we didn't preserve them in the sense that one traditionally would when at a Rule 51 conference, for instance, where the court presents the instructions to you and you have an opportunity to engage in meaningful discussion about it, and then you can state your objections on the record. But the trial court specifically asked if there were any objections, and neither side raised an objection. So why isn't that a waiver? Well, the court – well, I guess I'm not sharing which part you're talking about because there were so many – Each time the court said, here's how I propose to answer the jury's question, did anybody have any objections, and nobody said anything. Well, in this case, each time the court presented its – and its proposed instructions that it was going to give the jury as far as the supplemental instructions were concerned, the court never actually ended up giving the instructions that it said that it would. Well, then it's incumbent upon counsel at the earliest opportunity to say, Your Honor, we have a matter that we need to take up with the court outside the presence of the jury, and you either do it at sidebar or you send the jury into the jury room, but you raise an objection to what the – you know, and say respectfully, you didn't do what you told us you were going to do, and you didn't do that. And we did do that when we came back on the seventh day, because the sixth day when the verdict first came back and then was sent back to the jury – it was resubmitted to the jury. And then when we returned on the seventh day, that morning, we raised the issue to the judge that there was likely some confusion on the part of the jury, and that we requested – Your real problem is that they changed their conclusion as to the constitutional issues, right? They changed their answers to the federal claim and to the state law claim of intentional violation of emotional distress. But that was part of the discussion. The other was not even part of the discussion. Well, that's true. And what is it that the district court said or did that could have influenced that? Well, this was most likely influenced towards the end of the several pages of discussion between the jury and the court, where the court ended up instructing the jury that they should go back and consider their previous answers and all of the evidence, and then that all of their answers had to be consistent. In that same supplemental discussion, the court also began that particular discussion with the federal claims, for the first time, actually. He hadn't mentioned them previously, but in this instance, he began with, you know, question one, question two, question three, and four, which related to the excessive – So do you have a page on the transcript that you can tell us where the plan error occurred? On what page did Judge Wenger make a mistake? It should have been obvious to him, but wasn't so obvious to you that you failed to object? Well, I guess I do have the page that said – A page would be good. Well, first, the court has a duty to discharge jury instructions that are – that clearly state the law and that are non-completing. If you go to ER 36, this is where we first see – we get their first inquiry after their first hearing. If the court can clarify – Court, go ahead. I'm sorry. This discussion from the side of the court starts at line 16. Or, I'm sorry, line two. That's when he acknowledges the jury question. Which is, if we say yes to all of page 23 of the jury instructions, number 20, doesn't that mean we answer yes to page 9 in the verdict of trial jury? Now, 23 is the element – it's in the jury instructions – the element for the affirmative defense, and page 9 of the verdict form is the question regarding the affirmative defense. The court speaks – discusses the potential answer with counsel and says at line 20, the answer to their question is yes. And the next time he agrees, and the court, you know, explains it's because they found privilege and if they find privilege, they find all those elements. And that's the way he proposes to answer the jury's question. And that was plain error? Well, if you go on in the discussion, he does not end up saying that at all. He doesn't answer a jury's question with a yes or even something close to a yes. But that doesn't necessarily include the federal claims, right? No, not at this point. At this point, it's just relating to the state claims, which the court – I'm sorry – the jury has made very clear that it has answered in the affirmative to number 6 and 7, which goes to the liability. Well, I was just going to – well, go ahead. All right. I was just going to – isn't the crux of your argument that the court got the jury confused on the effect of finding a privilege once – or an affirmative defense once they found liability? I mean, that's what we – we believe there are several errors, but we think that that is the worst, I guess, error, the plainest and most prejudicial error, because it is actually a very clear misstatement of the law, which is that if you have two federal claims and two state claims, like we did here, there's no requirement that you find consistently throughout yes, yes, yes, yes, yes. And additionally – And where do they tell them on what? All right. If you go to page ER-63. 63? 63. Sorry. Just because I couldn't speak into the microphone, I'm having trouble hearing you. Yes. If you go to page 63, this is – the court is in the midst of discussing the privilege. Line? I guess we can put line 17. And the court says, and there should be consistency between those findings. And that's when – and in this instruction, if you go to the beginning of it – I'm sorry. Which findings are those? If you go to page 62, line 10, he begins by discussing the four claims, all of them. And he begins with the very first one. Yes. And on page 63 on line 6, he says, so, in looking at the two state claims – Right. But then he says that at line 12 – or, sorry, 11, so when you're considering that defense, and that's the statewide privilege defense – I'm sorry. Which page now? 63. Line 11. So, when you are considering that defense, you consider the totality of circumstances. You consider what went into the claims you analyzed, the elements of those claims, and all the evidence that bears on that. Now, the only claims that they had already analyzed were the two federal claims and the one state law claim. Right. And that's what they were talking about there, because he just said so, in looking at the two state claims. Right. But without further clarification from the court and such lengthy, I guess, confusing instructions where the court constantly – Why is it confusing? What's confusing about that? It's the cumulative error of the instructions. You can tell by the progression of the questions by the jury, which they first begin by asking, basically, how does the jury instruction – how does that affect how we answer the verdict? The part that you're claiming is the most prejudicial deals explicitly with only the state law claims. And that appears to be correct, that as to those two state law claims, they need to be factually consistent. So, where is the error, let alone the point error? Well, I don't think that the court makes it clear that there's some sort of distinction between factual consistency, which we have no knowledge as to what's there. You're kind of not answering the question that I'm hoping to ask, I guess, which is, with respect to the state law claims alone, do you contend that it is erroneous to require those state law claims to have consistent verdicts? Yes. So that's – For there to be a consistency in answering yes, that there is intentional infliction of emotional distress, and also that plaintiff drew the false arrest claim. So, where – how – why would we believe that the jury would allow that to spill over to the federal claims? Because the court, in its last discussion with the jury, begins its discussion going back to question number one, which plaintiff's counsel, just before that instruction was given, asked the court to tell the jury that they were free to go back to question number one. But the court said that he wasn't going to give any more supplemental instructions because he didn't think that it was necessary and that he thought that he didn't want to, I guess, prejudice one side or another. What did the judge say was confusing as to question number one? You've already, it seems to me, conceded that he said nothing that was confusing as to privilege. He says privilege was perfectly fair. He did say something confusing as to privilege. In response to that – Why don't you answer my question about question number one? I heard you answer to Judge Graber. That's what I heard you say. You didn't point to anything that was confusing about privilege. But why don't you now tell me about question number one, the Fourth Amendment? What did he say was confusing as to that? The jury comes back and goes back and deliberates, and they change their mind for whatever reason. What is it that the district judge said that you think caused them to do that? It's the district court's continuous and repeated insistence that the verdict be consistent and continuing to use the word consistent, telling them to go back and look at their previous findings and make sure that they're consistent. That's it. But he's talking about consistency versus state claims. What does that have to do with federal claims? Well, he said that in the context of the federal claims and the state claims together, he discusses them all together. Let me ask you this. Is there anything else? Did he say anything wrong as to the law? Did he say anything confusing as to the applicable Fourth Amendment standards? With regard to the Fourth Amendment, no, not to the standard itself. So you're relying entirely on this word consistency to argue that this was confusing as to claim number one? Well, it's the fact that he said it has to be consistent. Yeah, he's saying it has to be consistent, but he's also telling the jury— Just to make sure I understand, so if I look at this and I can assume that we're consistent to apply only the state claims, then you haven't— I realize you disagree with me on that, but if that's where I come out, you don't have an argument as to the Fourth Amendment. There's nothing else. If it's just a consistency statement? Yeah, if it's a consistency statement, if I look at the instructions that say that you don't have an argument as to the Federal claim, as to the Fourth Amendment claim. The only other argument that we would have where he does address the Fourth Amendment claim after the jury has clearly come back with findings for the defendant is that in discussing how to—you know, the go-on instructions to the state law claim, where it says, if you've answered yes to one and two and or three and four, he tells the jury, if you answered no—I'm sorry, if you answered yes to number one and two or if you answered yes to three and four, and we believe that the cumulative effect of all of these instructions, that also would imply to the jury that they need to go back and reconsider, especially in light of— I can't. They may. I'm sorry? They may. Nothing. We must, but they may. No, he wasn't telling them that they may. He was just saying as far as when they go on to the next instruction, how their previous— I mean, the fact that he was almost surely thought he was talking primarily about his J claims, and if there was anything that could have spilled over, if you had objected or said anything, it would have been fixed. In other words, if this was at all confusing to somebody, it was confusing in a minor way and almost surely non-deliberately. So the failure to object with a plain error problem is particularly severe in this instance, isn't it? The argument that a jury— More specifically, you never specifically objected with regard to the federal claims that he was confusing people. No. Let me follow up on that. You kind of assumed all along that even though you did not object, that you can have plain error review. I don't find anywhere in the record where you specifically objected, but you have not talked about the amendment to Rule 51 or how that might affect our previous ruling. Can you address that, please? Do we even get to your problem if you don't solve the Rule 51 issue? Yes. The answer first is yes, we do believe that you would get to our problem here through the plain error analysis. So, as this Court is very well aware, it has a long history of being the strict disenforcer of Rule 51 in that it refused to recognize a plain error exception for failure to object in accordance with Rule 51. In order to determine whether the 2003 amendment, which adopts the Terminal Procedure 52D language, whether that aggregates this Court's precedent, requires us to go to this Court's rationale for refusing to acknowledge the existence of this exception. The Court has made it very clear that the reason for its refusal to acknowledge this plain error exception is based upon their strict construction of the statute. Basically, just to cut to the chase. Yes. My understanding, or my impression, is that in order for you to have a shot at the plain error review, and you can see that a number of our colleagues have serious questions about whether you've established that. Certainly, as in the federal claims. But in order to get there at all, we need to change our law. We have to find that our previous case law is, in effect, abrogated or overruled as a result of the change, the 2003 amendments to Rule 51. Is that correct? Yes. But considering that the underlying rationale for this Court's finding that there is no plain error is based upon the fact that there is no such language in that statute. They refuse to just create an exception where one is not provided by the statute. And you do agree, I gather, that as a number of colleagues have pointed out, you didn't specifically object. So in order for you to get to this point, we have to overrule a previous case or cases to get to your point at all. Is that right? That's right. Okay. You'd have to recognize that the 2003 amendment now creates a plain error exception. Well, couldn't we follow the dicta in the Hunter case? You could follow the dicta in the Hunter case, but relying on the Hunter doesn't actually really examine that question because it finds that it doesn't examine it in the footnote, but in the body of the opinion where there is actual precedent, it addresses the de novo review for the objection that the party actually was able to preserve. Before you run out of time, would you please address the qualified immunity question? Yes. The officers are entitled to qualified immunity because the law was not clearly established at the time of the incident. In what respect was it not clearly established that there had to be reasonable activity in response to the danger presented by the child? Well, there is no law that would have indicated to these officers that there is a requirement that this child poses danger to himself. The language of the Welfare and Institutions Code provides that an officer can take a juvenile into custody if he has reasonable cause to believe that the juvenile is beyond the control of his parents, custodians, or guardians. Now, leaving aside whether this applies at all to the schools, which is an experiment question, what evidence did he have other than when teachers used the words out of control? Well, she did report him to be out of control, but she also did indicate verbally and by a campus that he was a fronter and that he would run off campus. Well, she didn't say he would run off campus, right? No, she did say that. To the officers? Yes. It's in my petition for you. I can find it. She told the chief that he would run off campus? Yes, that he's a runner and that he would run... She said verbally he'll run off campus. Yes. Where was that? I thought that was a good name. No. I will find that. In any event, there was no emergency at the time. The kid was sitting there, calmly. Everybody agreed there was no danger to anybody at that point, and if he had tried to run at that point, they were all around him. So, wouldn't he ask some questions, like what do you mean he's a runner? How do you know he's a runner? Because the actual evidence is that two years before he had gone to the parking lot. That's basically all the evidence that he was a runner, right? Well, that's not what the officers knew. Well, that's correct. They didn't ask. Well, the officers were trying to engage with the juvenile... But it was basically catatonic, so that doesn't seem like a cause to arrest and detain. I mean, Defendant Crockett at least testified that before he got there, based on the reports that he received, he wouldn't have any basis to know whether he should arrest or detain this child. It would be all dependent on what he found out when he got there. And what he found out when he got there was basically that there was this small child sitting there. Well, I wouldn't characterize him as versus catatonic. He stated that he was purposefully not answering questions. I mean, it was a defiance. Well, whatever it was, there was no physical anything. There was no verbal anything. There was nothing of the kind one sees in cases in which people are arrested for resistance. He was just sitting there. That's true, but the Welfare Institution's code, which it provides that they can take him to Montgomery if he is beyond the control of the school, in this case we believe the school, which was not disputed by the party's experts. Is there any case law that requires officers in a situation like that to ask, basically to probe what the school officials tell them? To probe the school officials? Yeah, before, in this case, taking the steps that they did. Well, the school officials... I know about that code, but I'm asking for a case law. Is there any case law that says if you come onto a campus and they tell you X, that before you do anything, you've got to probe, you've got to get behind that? We are not aware of any case law that says that the officers were required to go beyond what they did, particularly where the teacher told them that the child could not remain on campus anymore. Even when the facts are inconsistent with what the officials say? The fact that... I mean, they look at him. It's not like this is a blind box. They see him sitting there. He's not running. He's not being belligerent. He doesn't have any signs of struggle or fighting or anything of that sort. What basis do they have for saying that he falls within California welfare code 601? Well, they have not only the statement by the school, which by itself according to rule 601 by Wilson Institution Code Statute Section 601 and 625 provide that even a school administrator, like the teacher who was saying that he was out of control, can issue a notice to a student if they believe that he's beyond the control of the school or the guardian and the parents. Eventually beyond the control, I think, is the statutory terminology, correct? Right, beyond the control. And she has determined that he is beyond the control, as the statute allows her to do. It allows her to determine he's beyond the control and issues him a written notice to appear in court. Why is she a custodian? Custodian, parent, guardian have specific meanings. Yes. And school officials are not custodians. They're not parents. They're not guardians. So tell me why 601 applies at all. Well, for the purposes of what the officers would have known at the time, both police practices experts testified that officers, California post-trained officers, were trained that in relation to the welfare institutions code, they're trained that the school is their guardian or custodian for those purposes. So 602 provides a specific section about schools. And this trial did not meet the definition of someone who qualified to be taken into custody under 602. Do you agree with that? Yes. Yes, we do. But don't these questions, though, that my colleagues have asked, point out the fact that the law is not very clear in this area? Right. And if that's the case, isn't that the very definition of what brings us about the qualified immunity? If the law is not clear, and if the officer coming on campus doesn't really know for sure what the law is, then we don't hold them liable under qualified immunity. That's correct, yeah. Well, it's not correct as to my questions. Mine didn't imply anything, so I'm clear. I'm sorry, what was your question again? Well, whatever it was, it didn't imply. You heard them all, so I'm clear. Well, I mean, in this case, because of the welfare institutions go ahead, and or the obligation of the article 80. I guess what I don't understand is where does the evidence come? Where do the officers get evidence on which to make an arrest that meets the requirements of 601? Persistent or habitually refuse to obey. They need to accept everything in the school. Oh, we're not contending that he meets that standard. The California courts, at least, one of the only things they do. So what are they going under? The beyond the control part of it, which the California courts have said are two separate histories. But obviously beyond the control has to mean something other than persistently or habitually refuse to obey. So what does it mean in this context? It means that he's gone away or something. Well, we only have two cases that continually get cited by the courts. And they both involve some kid who ran away. Well, there's two. Who wasn't there and, therefore, was beyond the control of his parents because he was then left. But there are several other. Well, one of them, yeah, he went to Mexico. And the other one also had gone away. That's what it has to mean because if this isn't persistently or habitually refusing to obey, then what's the additional content of beyond the control? We don't know. All we know is the California courts have said that a single incident can be used as a what if it's not persistently or habitually refusing to obey? If a single incident is sufficiently serious. So what were the objective manifestations that this was a sufficiently serious situation? The officers, they came, they saw the kid. He's quiet. He's not out of control. He's not trying to run. He's just sitting there. I mean, this is a kid who came in for recess. This is a kid who was on the 504. That situation occurs every single day in probably every school in California. That's true. So, I mean, the police officers just aren't agents of the school district. They have an independent obligation to enforce the law. So tell me what were the objective manifestations in the circumstance that would lead police officers to conclude, independent of the school, that this kid was out of control? Well, independent of the school, beyond what she told them early and gestured. Well, they did try to get information from him that would let them know that he was. Did they call his parents? His parents weren't available. Did they call them? No, they were told his parents weren't available. Did they call who was available? Yes, uncle. No, they didn't. They called him later, right? Did they call the uncle before they got there and told him? Well, they asked for information that the school would gather. Right, right. So they did. So they didn't talk to anybody. Did they ask about this medication thing? Like, does the school have the medications? Well, it's not clear that they had to ask for that or what information they needed. That might be the question. Did they ask? Oh, no, they didn't. All right. At this point, I just want to. Thank you. I just want to remind you again. Okay. Let's hear from the other side. May I please report? Julia Lozada, I represent BB, the plaintiff's appellee in this case. First, going to the issue of the jury instructions on how the federal rule of civil procedure applies. It is our contention that the appellant never did put any objections on the record regarding the instructions and the judge's colloquy with the jury. After any such objections, the plain error rule would apply, and we're not saying that, in this case, the federal rule of civil procedure necessarily aggregates prior precedent, though Hunter does speak to the fact that the federal rule of civil procedure, the 2003 amendments were contemplated in that case, although they were not analyzed for plain error. Well, the old rule used to be that plain error only applies in criminal cases, and then the 2003 amendments, in effect, extended to civil cases. Does that make sense? Correct. Correct. And so we need to clean up our jurisprudence to reflect that, do we not? It would seem so, yes, especially in reading Hunter. However, the factors that are taken into account when assessing plain error, those have not been clearly established by any case law so far. We do have the guidance of the criminal law. So what's your position? Our position is that if plain error does apply in this case, that appellant has not sufficiently shown factors that merit a reversal under the plain error. You still have an answer with an if? You're answering the very question we're asking with an if? I'm sorry, Your Honor. We asked the question, right, what standard applies, and you answered with if it applies. So let me just ask the question. If the plain error applies, Your Honor. Okay. Okay, go on. And if we look at the criminal rules of Federal Procedure Rule 52, four factors are being outlined, that there must be an error, it must be plain, it must affect substantial rights, and it must seriously affect the fairness, integrity, or the public reputation of judicial proceedings. In this case, as the Court has pointed out, that we haven't been able to even establish that there was error, let alone a plain error in the judge's policy with the jury. Well, how do you get around the fact that on the very first return, the jury held nobody is liable, but the damages are such and such? Isn't that inconsistent? Inherently inconsistent? I'm assuming you're referring to the intentional affliction of emotional distress claim. Yes. In that instance, they did find liability, privilege, and awarded damages, and there seems to be confusion as to how that applies, what happens if you find privilege, what that does to the liability aspect of the case. Well, even the judge talked about confusion and apologizing for adding to the confusion. Don't we have to take that into account? Well, yes, his apology should be taken into account, but it was also he pointed out that there was error on the special verdict form that may have misled them, and he did discuss that the reason he's reaching the verdict to the jury was because of the typographical errors and the fact that they cannot return damages with a privilege for the finding of privilege, and he did very clearly instruct them that if they find liability and if they find privilege, no damages are to be awarded, but if they do find there was no privilege, then damages should be awarded. But there doesn't seem to be any error on our part as to how they dealt with the state law claims and the question of privilege. In hindsight, should the court have simply entered a, accepted a partial return on the verdict and simply sent the jury back to answer the questions that they had not yet answered? Wouldn't that have simplified the task that the jury had? It's our belief that that shouldn't have been the case because it's clear that there was some confusion within the jury. So the jury should be able to- Well, somebody could have asked for that. I mean, the defense could have asked for that to happen because that does happen on occasion. Yes, they could have asked for it in the direction- And nobody asked. Nobody asked. All right. Well, how do you explain the colloquy? I'm looking at ER 65 starting at line 3 going down through line 17. I won't read it into the record, but essentially it's the court in trying to talk about the problem with answering question 10 that brings up prior answers 1, 2, 3, and 4 dealing with the federal claims and then injects at line 10 because there aren't defenses to the first two constitutional claims. I mean, why didn't that confuse the jury as to what it was that they were supposed to do? And then there's all this talk about the need for consistency in the verdict. The need for consistency in the verdict, I think, was taken out of context. You have to look at the entire discussions that the judge had with the jury. And it's very clear in looking at ER 63, lines 17 through 20, that he defined consistency. The consistency is a function of how you talk about it, which evidence you believe, how much weight you give to the evidence. It's clear that he was describing consistency and relating it to the findings, meaning that the jurors must reach conclusions that they find are consistent with the facts and everything that they heard at trial. It's not that they're famous. The one confusion is that the original verdict court is not, it's in the record, but it's not in the excerpts, is that it? We don't physically have it. No, we don't have the physical original. We don't physically have it. Did we get it from the district court? I'm sorry, did the district court have it? Do we know? Does anybody have it? I do not know if the district court has it. Well, did they just send it back into the jury room and then started substituting pages? No, we wrote a new verdict court at that point. They did the edit originally, and then we submitted it. What we don't have is the verdict form as filled out by the jury originally. I think it was originally not. And that's because they sent it back to the jury room and started substituting pages to correct typographically. Correct. I mean, this is a mess to try and figure out. Yes, it is. On review, what happened? Well, the thing is to look at the insider's approach to look at the whole. Nobody made a copy of the verdict, the form as it came back, before sending it back to the jury to change? Not that I'm aware, not from my review of the record. So your understanding is they physically handed back the already filled-out form to the jury? I believe so. I wasn't at the trial, so I wouldn't be able to speak to exactly what went down, but in looking at the record, it seems that that's how that went down. It tells the court that it's going to give back the verdict. Correct. Not before they go back into the room. Correct. So it's possible they threw it away. It's possible. Can I change the subject a little bit over to the qualified immunity issues? Are you aware of any case law that says that a police officer is not entitled to rely on the representation of the school officials regarding one of their students? No, there is no case law specifically on that point. And what about In re Joseph F.? That actually goes the opposite way. It says you can't rely on it, right? It does say that you may rely, but there's also the expectation that, at some point, there's something there that the police officers are able to see and sort of verify certain aspects of what is being claimed. Isn't there a difference between if she had said to them anything with any specificity, like he said X and he said Y and he ran in a certain direction, that's one thing to rely on, she's telling the truth. The problem here isn't so much her telling the truth, it's just not knowing what she's talking about. Correct. Here, in this instance, the only thing that Coach Sinclair told Chief McIntosh at the time was that Phoebe was a runner, that he hadn't taken his medication, and that he was out of control, which was a conclusory statement. Chief McIntosh, given that information, also started to think that there might be some sort of mental or emotional disturbance or handicap with this child and still failed to ask any follow-up questions. Didn't she also tell the officers that she wanted him removed from the campus? There is, she did state that she wanted him removed from the campus. So what is a reasonable police officer supposed to do in response to a report that the student is out of control and the school official, who is the responsible person, says to the officer, get him out of here? Well, Your Honor, the police officers cannot act as conduit for the school administration and they can't be disciplinarians for them. So the property owner and the person who is in custody of the school child cannot expel a student from the school and tell the police to remove them? Of course, if there was an expulsion and it was decided that there would be an expulsion and that the child showed up at the school, regardless, then an officer can be called in to remove the child. But if she says he's beyond my control, get him out of here, isn't that a de facto expulsion, at least for that afternoon? It's our contention that it is not. You wouldn't expel a child without at least notifying their parents, letting them know that there was... But they called the uncle and then they took him to the uncle. I'm trying to understand why a reasonable police officer, why it would have been clear to any reasonable police officer that he could not comply with the request of Coach Sinclair to remove Connor from the campus. Well, there is no... It would not have been reasonable for an officer to think that the child could not comply with any request, specifically when the officer was asking the minor to stand up, but he can't be manufactured. That was the first time that Connor had complied with anything. Well, he was never asked... He wasn't responsive to any question that they asked him. Correct. And the only thing they finally decided was they were going to have to take him, so they asked him to stand up and put his hands behind his back. It was the first time he had cooperated. That's true, but they could have also asked him to go back inside the pool and see if he would have cooperated with that. Tell us on a second... I gather that there are two issues here. One is should they have taken him, and the other is should they have handcuffed him and let the handcuffs on for half an hour or whatever. Correct. And they're separate, is that right? Yeah. And they're separate because one is a seizure question, and the other is a question of innocence. There's a fourth question or what? Yeah. One is a seizure question that we look for Fourth Amendment, of course, and we also look for the Fourth Amendment for the excessive force question. And in our mind, since the officers had no right to actually arrest or detain this child, then any amount of force was unreasonable. All right, but suppose they did. Suppose they had the right to take the kid back to his own home. Suppose that they had the right, then they should have looked at their post of training at the very least and seen that they are not or they're advised not to handcuff children under the age of 14 and look into the totality of the circumstances as it relates to the child as a whole. They can see a count of characteristics, the fact that his weight, his age. What should they have done? So let's suppose that the seizure was okay, that it's okay for the officers to take the child back to his uncle. At that point, how are they supposed to do that? They could have walked him if that was what they wanted to do with the child. They could have, since he complied with all of their instructions and there was no showing that he was not being compliant with science, it would have been reasonable for them to just walk him. Even if the two of them on either side of him had walked him, there is a possibility it hadn't been handcuffed, but it would have been easy for him to just run around one of the officers and take off, right? I mean, that's a possibility that was sort of far-fetched in the fact that there hasn't been any indication that he would do that. Well, except for Coach and Claire warning them that he was a runner. And then not explaining what the runner meant. Well, but she told them he's a runner. She was the one who had charge of him at that point. She obviously knew the child. She's the one who had summoned them, and she tells them he's a runner. And as we've discussed before, there's no case law that says that the officers are not entitled to rely upon what the school officials tell them. Let's assume for a moment, the chief judge and I lived, or I used to live, he still lives within the Palos Verdes Peninsula School District, and I actually represented them for years, not on these issues. We have cliffs along there where the school treats a lot of people that have these special needs issues. And if a runner takes off, they can go right over the cliff. Let's assume that this situation was right there and the officers didn't handcuff him, and he took off and went over the cliff. Would that be the school's fault? They've told the officers, hey, this is a runner, and he said, oh, you can't touch him. And he runs off the cliff and he kills himself. Would the school be liable? You wouldn't hesitate to be here, would you? Well, I guess in your exact scenario, the school may be liable. So, again, I don't fault you for your advocacy. I'm simply saying that in a sense aren't we putting the officers in a situation where the law is not clear? They're trying to do their best, they're trying to rely, but you don't want to be unreasonable. They're just stuck. Isn't that the very kind of situation for which the Supreme Court has made it so clear? When the law is not clear, we allow these officials, who have a very difficult job, to do the very best they can. Now, there are some extreme illustrations. We all know that. But in this kind of situation, isn't this the very situation for which qualified immunity exists? We would agree that it is not. We would say that it is not. Because the law, even if we were to take the law in the manner that opponents urged us to, that 601 was to apply, there's still the reasonableness factor. And that stems from the language in 620, in Wilfrid Institution Code 625A, that the officer must have a reasonable belief that the minor is a minor, described in Section 601A. But with respect, counsel, that's the situation when the law is clear. When the law is clear, I don't think anybody on this Court would disagree with you on this, but the very questions that have been promulgated by my learning colleague shows that the law is not clear. And if the law is not clear, how then can we find these officers liable when, if we don't know what the law is, how are they supposed to know what the law is? It's not that I don't think that we don't know what the law is. If you look at the Supreme Court decisions in New Jersey v. TOL, they did establish at least a floor for how school administrators and even in certain instances police officials are to act when it relates to these types of instances of misconduct or what have you. And in that instance, there is still the special-needs drop doctrine that was developed, and it still basically says that even if not probable cause, then at the very minimum officers need to act with reasonable causes. You're getting pretty far. My apologies. You're not suggesting, are you, that the officer has to have probable cause? No, no, no, no. That is not the suggestion here. I think that your argument is really directed to the second prong of TLO. I mean, the first prong is that the search, in this case a seizure perhaps, is reasonable at its inception. And so they have the word at the school that there's some trouble, he needs to be removed, he's a runner, he's off his meds. So prong one, probably satisfied. And prong two is that the search, in this case the seizure, was reasonably related in scope to the circumstances that justified the interference. Is that where your quarrel is? Yes. And tell me why. Because it wasn't reasonable related to the scope. In what respect? I'm sorry? In what respect? Because this was a child who was, again, compliant and who didn't show any kind of behavior that was out of control. So what was not reasonable, handcuffing him in the first place, taking him to the car, leaving the handcuffs on while in the car, or all of the above? It's not reasonable to handcuff him in the first place in this instance. So would it have been okay if they took him without handcuffs, escorted him to the police car, and put him in the back behind the safety screen? Would that have been all right? That would have been better, yes. Well, would it have been constitutionally permissible? Your position is that it was an unconstitutional use of excessive force to put handcuffs on him, period. Correct. So why isn't it unconstitutional, then, to put him in the cage car? It wouldn't have been unconstitutional if they were trying to deliver him to a place of safety. If they were taking him to his office? Well, they didn't even know if the medications he needed would have been available to him. I mean, this was, again, a child that had a disability. If they had taken him to the hospital, would that have been constitutional? Yes. So it was unconstitutional for them to take him to his uncle, but it was constitutional to take him to the hospital? Yes, it would have been constitutional. And the officer should have known that it would be unconstitutional for them to put him in the car and take him to his uncle. Well, given the fact that if they had concerns about his welfare and the fact that he wasn't on any medication, I mean, right now in this case, we were lucky that it wasn't the type of medication where he could have sustained some sort of very serious injury if he hadn't taken it. For the officers to say that they were protecting the child and they brought him to the uncle for those protections without ascertaining at the very least if the medication was available on site, shows that they weren't speaking to the child's welfare or safety. Had they brought him to the hospital, even if erroneously, mistakenly, if he didn't need to see that his condition wasn't so severe, at least we could understand that they were acting in a manner that was for the child's welfare and safety. Did either of the police experts in this case talk about, this may be extremely naive of me, but about why handcuffing was a way to prevent escape or running? Did they talk about why handcuffing was a way? Why do you think somebody is going to run you a handcuff? I mean, they don't run with their hands, so what does that mean? There was some conversation about handcuffing. And the idea was just that it was more difficult to run with your hand handcuffed behind your back. Do you know what the medications were the CD was on? Ceridoline? Ceridoline and there was something else. Adderall or something? It wasn't. I think it was Ritalin and Zoloft. Yes, I think Zoloft. It was one of the depressants or antidepressant type of medications. Which would in part explain why you might have been a little hostile, because there's kind of an up and down thing, depending on where you are in the cycle of the medication, right? Yes. That would not necessarily have been an indication that he would hold like that. Right. Right? Correct. And this was a student who, again, as the chief of police understood, had some sort of either medical, I'm sorry, mental or emotional, and he called it a handicap. And based on the fact not only that he didn't take medication, that's not just that statement, but by physically observing him at the time. This was a student who sat down in a docile position with his hands at his thighs and most of the time with his head down. This wasn't somebody who was contemplating running away. We don't know that, do we? I mean, that's what I was just, the point I was just making. I feel great empathy for CB. I mean, he's obviously got a difficult situation, but we're talking here about the very difficult role of schools, the very difficult role of officers in carrying out their responsibilities when you have these very difficult situations where you have a child who at one moment may be docile and so on and so on and then may falter, flash out, or whatever. And apparently in this case, according to the school official, had done so. Now, the officer didn't inquire more into your position that they had an obligation to do so. We haven't explained how, why, under what circumstances, what methods they had to do that. But the bottom line is they're in a tough spot. And I gather you're suggesting that if there is ambiguity, that's just tough. If the lawyers, not the lawyers, but the officers in the school district just basically take their lumps and everything gets resolved in terms of the perfection of hindsight. Is that what we're really talking about here? No, Your Honor. The way that we see it is that this officer had an obligation to act reasonably within the scope of his own duties. It's one thing if he's out there and he was in an ambiguous situation regarding the nature that C.B.U. was under or what the medication health could have affected him, but at the very least, if they had inquired as they're trained, by post, to investigate. Again, counsel, with respect, you say, if they had inquired, I have not read that there's any authority that requires them to do so. I have not read that there's any case law that says they can't rely upon what they're told by the school district. So if those three things are true, and correct me if I'm wrong about that, then you're suggesting that we have to adopt the idea that the officer is somehow negligent if he or she doesn't inquire and conduct a little mini investigation rather than relying upon what the school district officials tell them. Again, I see no cases to that effect. So if there are no such cases and the officer doesn't do it, that doesn't mean the officer is wrong. Now, those of us on this panel may have done it very differently, but we're talking about what was the law. What was the officer required to do? And unless I'm missing something, there is no case law that says what I gather you say, which is they have an obligation to investigate and they have no right to rely on the school district. Quite to the contrary. What am I missing? We do have that right, Your Honor. I know. More generally, there is plenty of case law, is there not, as to what reasonable, whether it's reasonable cause or probable cause or anything else that if some person, unless there's something special about the school board or school system, if some person calls up, if a parent calls up and says, my son is out of control, take him to jail, the police can't just do that. They have to find out what's going on. Well, yes. And the issue here is the fact that it happened on school property and so the appellant's claim that that makes it unclear. I gather you're not saying what my colleague at Frisat is saying, that this is a police, typical police situation where the factual scenario that my colleague talked about, there has to be probable cause. You've got to do all the preliminary investigation. You're not saying that, are you? I'm not saying that there has to be probable cause. But whatever the cause is, you still, I mean, even if it's reasonable suspicion, no one's saying it's reasonable suspicion or something, somewhat more than that. If anybody on the street said, you know, that guy's out of control, arrest him, would that be good enough? Our contention is no. If we accept what the school, what the coach said, that's true, is that enough to call him away? No. Explain. Because this person made a, Coach Sinclair made a conclusionary statement. He's out of control, take him out of the school property. What exactly did she say? She said he's a runner? A runner and he hasn't taken his medication. She basically said he can't stay here. She didn't say take him away. She said he can't stay at school. Yes, I believe she said he can't stay at school. Okay. At that point, there's got to be some place else other than campus. Yes. There has to be some place else. Is that a police matter? I mean, he can't be here. Well, okay. He can't be here. Thank you for letting me know. I agree that it is not a police matter. Why does that make it a police matter? I don't see how it makes it a police matter, Your Honor. I believe that if a teacher doesn't want a child on property, then they have the proper avenues within their own school administration to effectuate removing that child from the property, calling the parents. Parents aren't available? There could be other reasons why a school would want a child not on the campus. For example, if they became ill and there was concern either about their welfare or being infectious to other children, they would definitely presumably have the right to say, you've got this child off the premises. But what would be the role, if any, for police officers in that type of situation? In that situation, if they were even involved, they wouldn't be involved in the law enforcement capacity. They're not going to be investigating if there was a crime or if anything had occurred. They would be helping transport a child, although I think at that point you would call medical professionals. What if a child is injured and the police is there and wants someone to take him to the hospital? There's no time to call an ambulance. They can do that, right? If a child is injured, let's say it's a broken arm or something that needs medical attention, but it's obviously not threatening, they can put him in the back of a police car and take him to the hospital, right? Yeah, if they don't handcuff him, they can put him in the back of the police car and bring him to the hospital. Isn't that essentially this situation? Because what had happened two years earlier was that this child had run out into the parking lot but had said, you know, I want to run out in traffic and kill myself. So isn't this really, in essence, the ill child scenario? Well, that would be an inappropriate conclusion in this case because the officers weren't, that wasn't within their purview of knowledge of what run meant. It was something that Coach LeClaire then thought about in hindsight. That was two years earlier. I'm sorry? It was two years earlier. It was two years ago and... But isn't that what you were getting at earlier when you said it would have been appropriate to take him to the hospital but not just to take him away in handcuffs? No, not, I'm sorry if I wasn't clear. It wasn't because of the fact that he was a runner. It was the fact that he hadn't taken his medication. But if, for example, the police had arrived and the coach had said, yesterday, he ran into the parking lot and he said this thing, and would that be different? If A, it's specific, and B, it had been current, then what? In that case, if they had a reason to believe that this was a student who typically runs away from authority or even runs away at his own whim, randomly, then...  Yes, the officers. The school officials. So you're saying that the officers, again, you're saying they can't rely on what the school officials said. In the example that Judge Berzahn gave, the coach tells you that it's yesterday, but they're still relying upon what she said, right? Correct. Especially given that specific set of facts, which they can evaluate, as opposed to a conclusion. Yes, it is giving more facts and more credence to the coach's conclusion. Well, if the coach says, you know, two years ago, he ran a plot that he was going to kill himself, and he also threatened the life of another student, they can't believe that, but they can believe something that happened the day before, as relayed by the coach. Is that what you're saying? What the coach actually said, she just said, runner. She didn't say he ran. Correct. She didn't say he ran the day before. The implication was that he ran on more than one occasion. It's true. Yes. And did he? No. Well, according to the coach, that he ran away sometime two years ago, and that was the only other time. Right. He had one occasion two years ago. Correct. Counsel, may I interrupt you? You've got eight seconds left, and I need to clarify this case of the missing verdict form. We're missing a 777, and maybe we're also missing the verdict form. As I look at the record, the verdict form is dated September 1, but when the jury originally came back, it was on August 31, and on page 29 of the record, the court was saying, we have what I believe is an inconsistent verdict. And then on the Fourth Amendment claim, no liability. Civil rights claim, no liability. Intentional inflection, liability, but also privilege. And then for the false arrest, they never answered it. So in the original verdict, was that on a separate, was that on a different verdict form which is no longer in evidence, or was the verdict form that we have in front of us modified somehow? I could not tell you for certainty whether it was a different version. It couldn't be this form, could it? I'm sorry? It couldn't be this form because there is change on ER 114. There is a change on question 3, but nothing else shows any changes. So it must have been a different form. Let's say question 1, right? This report says no liability, but the form we have shows yes marks. It doesn't show no crossed out. Right. So it must have been a different piece of paper. Yeah. And we don't know what happened. Well, I want to be sure that we understand that the original verdict was no liability essentially on any of the claims with the mistake that there was damages. But what really strikes me about this case is that they come in on the civil rights claim and the other of the leading claims the day before, city not liable. But then they come back the next day, city liable. And it has nothing to do with the verdict form issue with respect to those first two claims. How could that happen? I believe that the jury fully understood the law at that point, that things were clarified to them, and they independently changed their minds. They didn't even deal with the federal civil rights claims, did they? They dealt with the state law claims. The only thing we're clearing up are the state law claims, and then they come back and flip the federal claims, right? That's what's troubling me about this case. It seems that they independently reached a conclusion that the judge never directed them to review their answers, never specifically said anything was improper or that they reached the wrong conclusion. Having no conversation on the record. What possible explanation is that they thought the privilege applied to everything? I don't think looking at the record and the criteria. That's why it would have been helpful to me to have seen the earlier piece of paper because then you could have seen whether that was a plausible story. But from something that was said along the way, it seems that maybe they thought or maybe the judge thought they thought that the privilege applied to everything. Well, the jurors were individually polled, and they did give their verdicts, and they were unanimous. I mean, originally they thought the privilege applied to everything, and that's why they switched it. When they became clear that the privilege didn't apply to everything, that's when they changed their vote. I mean, that is very possible, and the thing is that they did independently change their minds on the first two federal claims without any improper instruction or policy from the judge. And it's within their province to come to their own determination after looking at all of the evidence and reaching a certain finding. The fact that they reviewed the jury instructions, the written jury instructions, and came to a clearer understanding of the law and how it applies in this case, we can't fault the judge for discussing qualified, excuse me, privilege on the state law claim for that. That's it. Thank you. Thank you. We have a little time left. Ms. Wu, you have a minute and 20 seconds. Yes. All right. I think it's important to acknowledge that plaintiffs have already acknowledged that there is no case law that would indicate to these officers at the time that their conduct in arresting and taking them into custody was unlawful. I was directly asking them in the last oral argument, and they weren't able to cite any cases. Well, absent the statute, you would agree that they can't just arrest a kid. I'm sorry? Absent the statute, you'd agree that they just can't arrest a kid. You can't just go in and arrest a kid. Yeah, I mean, absent the statute that gives them that authority, you can't just go in there and do that. Even if it's civil authority, they want them to. Well, if you believe that the welfare institution is going to do or apply that, then it does. But if you don't have that, then you have no- There's no justification. So your ultimate position is that if a school teacher or any official at the school calls up and says, this child is out of control, take him away from here. They can do that, handcuff him, put him in a car, keep the handcuffs on for half an hour, and so on. Without warning. Oh, I think that that would depend on the situation, because just like if a parent were to say, take my child away, he's out of my control right now. I don't think that an officer, well, I think an officer would be- So the only additional information, then, is that she said he was a runner and said he hadn't taken his medication. That's why? It isn't because she said he was out of control. It is. It is because she said he's out of control.  Now I'm really confused. I thought you just said that wouldn't do it. If a teacher called up and said, this child is out of control, take him away. I'm sorry, I misunderstood. I understood the question to ask whether an officer could just go in there and handcuff him. But under the specific circumstances here, I think that it's questionable, because if you're having an official tell you this child can't stay, I don't know what the alternative is. Did the officers know Coach Sinclair? And did they know that she was the designated school official in charge of his 504? The officers were not familiar with Coach Sinclair. Okay. And they didn't know that she was the school official designated to take charge of him when he was disruptive? No. He did not. So I still don't understand the difference between my hypothetical and his situation. I mean, particularly because when they got there, they saw nothing that was consistent with the characterization, which is just a conclusion. So what's the difference? I think there's a difference between what's consistent and something that isn't brought to the question. When someone's saying that someone's out of control and there's no evidence at all, but he's not computing it. But what's the evidence? The evidence is just what the teachers told them and their observations, but he's refusing to respond to the officer. I'm sorry. You're saying that if he had said, no, I'm not out of control, that would have made a difference? If he had maybe engaged in a discourse, I can't really say what would have happened, but at least they would have been able to have a conversation and make more detailed determinations. Are you saying they were saying, look, they talked to him and they saw his demeanor. He was sassy to them, so they knew he was out of control. Isn't that what you'd be arguing? That they knew he was out of control? Yeah, but, you know, they talked to him. No, they had a basis for doing it. Well, I guess it would depend on what he said. I mean, the school says he's out of control, and the observation, everything they get out of it, it's completely not out of control. But he's also not being responsive. So I guess at that point they're not sure if he's being defiant and not obeying her. They're not obeying a police officer. They're not interacting with police officers, and I think typically when a police officer gets involved in that. Did the police officer ever say to the boy, go back to school? I don't quite really think they thought that was an option based on the teacher's statement that he needed to be tested. How long did the officer talk with CB? Well, first Chief McIntosh got there, so his time there, probably about five minutes. Okay, and was he conversing with CB during that time? He talked to the teacher and also CB. Okay, and did Officer Propp talk to CB? He talked to CB. He didn't talk to CB. I don't remember seeing in Officer Propp's testimony him relating what he said to CB. Do we have any record of that, either from CB or from Propp? Officer Propp says that he did try to get him to engage in conversation. But did he relate in anything at trial what questions he asked him? Did he try to talk to him about basketball? Did he say, why don't you go back to the classroom? Did he say, do you want to go home? We don't have any of those questions, do we? I think he was trying to, from the record he says, I think that he was trying to engage in casual little kid conversations. But he did ask him, if we stand up, are you going to run? That's what he said. And what response did he get? Nothing. He said he did ask him to stand up, but he didn't run. Yeah, that's true. But before they asked him to stand up to be handcuffed, they did say, he said that. And they also, both or all of the police officers said that they well understood that this child was probably terrified. Well, he did say that the officers weren't mean to him. Yeah, but the officers said, of course, he would feel intimidated. Right. They understood that. Thank you. Jason Hardy, Wisconsin. We'll be right back.
judges: Kozinski, O'scannlain, Thomas, Silverman, Graber, Gould, Paez, Berzon, Tallman, Bybee, Smith